## A SPECIAL GRAND JURY ILLEGALLY IMPANELED.

Common Pleas Court of Summit County.

THE STATE OF OHIO v. ASA F. WEIBLE.

Decided, October, 1925.

*Grand Jury—Statutory Provisions for Summoning a Special Panel—
Dismissal of Existing Jury and Replacing it with a New Panel—
May not be Based on Nature of the Matters Awaiting Investigation.*

A challenge lies to a special grand jury panel in a county where it
has been the custom to retain the regular grand jury to the end
of the term for which they were impaneled, but the journal of
the court shows that on a certain day an entry was made, re-
citing that it appearing there is no further business to be
brought before the regular grand jury it is hereby discharged,"
and a second entry made on the same day and at almost the
same hour, states that "it having been found necessary to call
a new grand jury, the court this day ordered the sheriff to sum-
mon from among neighboring citizens and bystanders the fol-
lowing named persons having the qualifications of grand jurors,"
the reason for such action being that certain road contracts
were being severely criticised by the public, and the existing
grand jury was composed of more than half women who had failed
to indict in some minor cases and had no knowledge of road
contracts or the technical questions connected therewith, and
the prosecuting attorney was anxious to have these road cases in-
vestigated by men who would be intelligent in that line of
inquiry and would take such action as the circumstances war-
ranted.

PARDEE, J.

This cause came on for hearing on the 29th day of June,
1925, being a day in the April term, A. D. 1925, of the Court
of Common Pleas in and for the county of Summit and state
of Ohio.

The subject for hearing was the challenge to the array,
aiming said challenge at the selecting, drawing and summon-
ing of the grand jury, so-called, bringing the indictment in
this case, for the reason that the grand jury was not composed
of the requisite number of good, lawful and true jurors, on
account of a wrong method of selecting, drawing and summon-

ing of said jury. And it was agreed, both by counsel representing the state and the defendants, that the cases of Paul Kelly, Victor Olson, Paul Hollinger, Asa F. Weible, Harry Gilbert, and Fred F. Smith, might be considered at the same time, and the decision in one can apply to all.

Witnesses were sworn and examined, and cause continued for further hearing until July 3rd, at which time arguments were to be and were presented.

A transcript of the proceedings, with all of the testimony and exhibits offered in support of said claim of the defendants, is before the court.

The court, taking up the question of fact in support of said challenge to the array, finds upon page 4 of said transcript that witness A. C. Bachtel, being first duly sworn, testified as follows: That he was the regular elected, qualified and acting clerk of Summit county, Ohio; that he had charge of the records of the courts of Summit county; and he offered for consideration of the court Volume 115 of the journal of said court. Upon page 490 of said journal two entries appeared: "In re discharging of grand jury. This day, to-wit: the 13th day of February, A. D. 1925, it appearing that there is no further business to be brought before the regular January term of the grand jury, it is hereby discharged." And that the entry shows that Judge Fritch o'k'd said entry discharging the jury. Upon page 5 of the transcript the following entry appears: "In re calling a new grand jury. It having been found necessary to call a new grand jury, the court this day ordered the sheriff to summon from among neighboring citizens and bystanders, the following named persons having the qualifications of grand jurors." The names were read, and they appear upon the transcript, which is a copy of the journal.

The transcript of the record, on page 6, discloses that journal entry was filed on Monday, February 16th, 1925. It also shows that the journal entry discharging the jury was filed Monday, February 16th, 1925; and the journal entry calling the new grand jury was filed at exactly three o'clock on February 16th, 1925, and that Judge Fritch approved both entries,

On pages 42 and 44 of the transcript we find F. N. Hughes, being first duly sworn, testified as follows: That he is a deputy sheriff of Summit county; he was familiar with the handwriting of Alvin Henry; that he placed the signature of "Chris Weaver, A. Henry, Deputy," upon the paper which shows the return of the summons for jurors to serve as special grand jurors.

Upon page 43 of the transcript the witness was asked this question: "Referring you, again, to the information contained after the different names on that return, I will ask you whether or not, of your own knowledge, you know whether that information is correct?" And the answer was: "I do not." The entry under discussion was known as defendant's Exhibit 3, and offered in evidence on the part of the defendants.

(After an extended review of the testimony the court continued:)

The facts in this case show that the regular selected grand jury for the January term of this court, 1925, was called at the beginning of the term, and that it heard and disposed of cases presented at that time, and made a report to the court; and thereupon the said grand jury, by order of court, was retained for further service, according to the usual custom in this county of retaining the grand jury during the entire term of court, to be discharged only at the end of such term. And it is assumed that the court, in charging the regular grand jury, charged that it was the duty of the prosecuting attorney to call the attention of the grand jury to certain crimes that had been committed in Summit county, and diligently inquire, investigate, and true presentment make of all persons guilty of a violation of the laws of this state; and it was a further right that the grand jury had to require the clerk to issue subpoenas for witnesses to be brought before it to testify regarding any crime that had been committed in Summit county.

Article V of the Constitution of the United States provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

The Constitution of the state of Ohio, Article I, in the Bill

of Rights, subsection 10, provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur in finding such indictment shall be determined by law." And in keeping with the authority vested in the General Assembly by the Constitution, the Legislature, in Section 11423, provides that:

"On the fourth Monday in May, the jury commissioners shall meet at the Court House at 10. o'clock in the forenoon and shall there select such number of judicious and discreet persons, having the qualifications of electors of such county, as the court may direct, to be selected as nearly as may be from the several wards and townships in proportion to their respective population. No person shall be so selected who shall not, in the judgment of such commissioners, be competent in every respect to serve as a juror. When it shall become necessary, the commissioners shall meet at such time and place as the court of common pleas or a judge thereof may appoint, and shall there select such number of persons as the court by its order may direct and the names of such persons shall be selected, written and deposited in such wheel and certified to, as hereafter provided."

Sections 11424 provides that:

"After the jury commissioners have first ascertained the jury wheel to be entirely empty, the names of persons so selected shall be written by the clerk of the court of common pleas on separate pieces of paper, uniform in size, quality and color, which shall be placed in such wheel and securely locked therein in the presence of the commissioners. *     *     *     The wheel shall be securely locked at all times, except when by order of court or a judge thereof, it shall be necessary to place names in it or draw them from it in the manner herein provided. The clerk shall be the custodian of the wheel and the court or a judge thereof shall be the custodian of the keys."

Section 11425 provides for vacancy that might occur in the jury commission.

Section 11426 provides:

"When by order of a court of record in any county, *     *     * the clerk of the common pleas court is directed to cause the

summoning of persons to serve as grand or petit jurors in such courts, in the presence of the sheriff, he at once shall turn the jury wheel until the pieces of paper therein are thoroughly mixed, then draw from it the number of names specified in the order, and shall thereupon in the presence of the sheriff compare said names with the certified lists of officers,— * * * forthwith shall issue a *venire facias* to the sheriff commanding him to summon the persons whose names were so secured, to attend as jurors at the time and place in the order stated. * * * Except as otherwise provided by law, all grand and petit juries shall be impaneled, from persons so selected and 'summoned.''

Section 11432 provides that:

''At the close of each term of the court, all persons who served for the term either as petit or grand jurors, with those found to be disqalified, not liable to serve, or permanently disabled shall be discharged.''

The jury system of this state has been further safeguarded in this: Section 12829, ''Whoever, by request, hint or suggestion attempts to influence a jury commissioner to select or not to select himself or another as a juror, shall be fined not more than two hundred dollars and imprisoned in the county jail not more than twenty days.'' And it makes it the duty of the commissioner to report to the court the name of the person attempting to so influence him. And Section 12830 provides a penalty for a jury commissioner to accept any compensation or favor or promise to influence him in the discharge of his duty. And Section 12826 provides, as a further penalty, ''Whoever, with intent to corrupt a juror, or to influence him with respect to the discharge of his duty, either before or after he is summoned, appointed or sworn, promises, offers or gives away any valuable thing etc.''

Reference has been made to the foregoing sections of the statute and the law to show the safe-guards that have been enacted for the purpose of protecting the people of this state, insofar as their rights may be affected in the selecting and impaneling of grand and petit juries.

Section 13560 provides how the special grand jury may

be called during or after any session of the proceedings of the
regular grand jury; but where a special grand jury is called
at the direction of the Governor or the General Assembly, the
court of common pleas of any county or a judge thereof, on
written request of the Attorney General, shall order the sheriff
to call together a special grand jury. The jury which is chal-
lenged in this case was not drawn under Section 13560, but was
attempted to be drawn under Section 13568, which reads:

"After the discharge of the grand jury, the court, when
necessary, may order the sheriff to call together a new grand
jury, from the bystanders or neighboring citizens, of fifteen
good and lawful men having the qualifications of grand jurors,
who shall be returned and sworn, and proceed in the manner
provided by law."

The record in this case does not show that the special grand
jury, which array is challenged, was drawn or summoned in
compliance with this section. The record does show that the
regular grand jury for the January term was in existence on
February 16th, 1925, not having been previously discharged,
and the entry shows: "It appearing that there is no further
business to be brought before the regular January term of the
grand jury, it is hereby discharged." That upon the same day
and about the same hour a further entry upon the journal of
this court shows: "It having been found necessary to call a new
grand jury, the court this day ordered the sheriff to summons
from among neighboring citizens and bystanders the following
named persons having the qualifications of grand jurors."

The testimony in this case further reveals the fact that all
the matters and things that were to be brought before the
special grand jury were known for a long time by the prose-
cuting attorney of this county, but he gives as a reason for not
submitting the road cases to the regular January grand jury
that at least one of the grand jurors had said that he would
not believe Jack Weaver under oath.

Another reason was that he wanted a new grand jury, com-
posed of jurors, each and every one of them with some peculiar
fitness to go into matters that were to come up for considera-

tion; it was a matter that he thought weighed very heavily, which he had made public in his utterances and in his talks to his many friends, that every man on that grand jury ought to be chosen, or at least a great proportion of them, with some reference to his peculiar fitness as a business man or as an engineer or as a man having some peculiar fitness or training, so that the investigation would be exhaustive and would be concluded.

Another reason given by the prosecutor for not desiring the regular grand jury was because the regular grand jury was composed almost half of women who had had no experience in the construction of roads or handling of any other large contracts and two or three matters had been submitted to the grand jury which he thought should have resulted in indictments, and indictments were refused; and the only conclusion that he could draw from their refusal was that the grand jury had upon it several people who through themselves or other interested relatives were prominently idntified with democratic politics, and he ascribed their refusal to indict only to the fact that politics was a motive with them that could not be laid aside in their deliberations, and he thought if they would not indict upon stuff that was foreign to road cases, with all the newspaper publicity, and all the comment and the feeling that he felt was rife in the community about those road cases, he thought that if they would not indict on comparatively simple matters, that they most certainly would not indict upon important matters. These were the several moving reasons why he would not present that road cases to the regular grand jury.

And he further testified that there were no legal impediment to the qualifications of the regular grand jury, and that the grand jury were qualified to act as grand jurors as far as he knew.

The prosecutor further testified that he discussed part of these reasons with Judge Fritch, and he submitted the reasons to Judge Fritch why the regular grand jury should be discharged, and following the discussion with Judge Fritch the regular grand jury was discharged, and a special grand jury attempted to be drawn.

The record does not disclose that the men constituting the special grand jury were served or called by the sheriff of the county, from the bystanders and neighboring citizens, as provided by law; and, as far as the record discloses, there was no legally constituted grand jury; and, as far as this court knows from the record, there was no grand jury.

It has long been a cardinal principal of law, and it not only is made the fundamental law of our land by the Constitution of the United States, but also by the Constitution of the state of Ohio, that no one shall be put upon trial for any infamous crime or felony until he has first been indicted by a grand jury of the county in which the crime was committed. The institution of the grand jury is of very ancient origin. The grand jurors are sworn, or should be sworn, to diligence, secrecy and impartiality, to inquire with zeal, hear with attention, deliberate with coolness, judge with impartiality. The laws of this state have been enacted for certain purposes. They surround the citizens of this state with the protection that the Constitution gives them, and the criminal statutes of this state must be strictly construed.

In this challenge to the array, this court is not called upon, nor does it undertake to pass on the guilt or innocence of the defendants, or any of them, nor do I by this decision wish to express any opinion as to the guilt or innocence of the defendants; nor does the court undertake to criticise or comment on any of the persons serving on the so-called special grand jury. The court in this matter is confronted with a purely legal question, and, regardless of what responsibility I am assuming, I am of the opinion that the law has not been complied with, and the grand jury was not regularly selected, summoned and constituted, and I will therefore sustain the challenge to the array of this grand jury.

The foregoing decision will not prevent any regularly constituted grand jury of this county from hearing and determining the rights of the defendants involved in this challenge to the array, and to determine the rights of both the state of Ohio and these defendants.